**JARRETT v. COWAN. (No. 8809.)**

(Court of Civil Appeals of Texas. Dallas.
June 9, 1923. Rehearing Denied
June 30, 1923.)

**Trover and conversion ⬤➡66—Evidence held
for jury on question of conversion of cotton
and value thereof.**

In an action by a bailee against a cotton
buyer for the conversion of cotton, evidence
*held* sufficient to go to the jury on the questions of the conversion of the cotton and its
value.

Appeal from District Court, Hill County;
Horton B. Porter, Judge.

Action by J. H. Jarrett against T. P.
Cowan. From instructed verdict for defendant, plaintiff appeals. Reversed and remanded.

Frazier & Averitte, of Hillsboro, for appellant.

Dupree & Crenshaw, of Hillsboro, for appellee.

HAMILTON, J. This is an appeal from
a judgment upon an instructed verdict given
the jury before which the case was tried.

On or about the 10th day of March, 1919,
appellant was engaged in the business of
conducting and operating a public cotton
yard in the town of Abbott, where cotton
was weighed and stored for hire. For every
bale of cotton weighed a ticket was issued
to the owner to evidence appellant's possession for him. Five bales of cotton from the
1918 yard delivery remained in appellant's
possession at his yard about the 10th day
of March, 1919; it having been delivered
some time during the previous fall.

Appellee was a cotton buyer in Abbott.
engaged in buying cotton from farmers and
shipping and reselling it. The five bales of
cotton in appellant's cotton yard were unprotected and exposed to the weather. It
was the opinion of both appellant and appellee that this cotton was being damaged
and deteriorating by reason of such exposure. A conversation ensued between the
parties concerning the injuries to the cotton
on account of its exposure, and, as the holders of the tickets issued for the respective
bales had not presented them and demanded
the cotton, the question of protecting it came
up, and appellant suggested that if he had
any housing facilities he would store it for
protection.

Appellee had a shipment of cotton going
out to Waco, and he suggested to appellant
that the five bales of cotton be shipped to
the compress at Waco with his shipment.
A few days thereafter the cotton was delivered to the railroad company by appellant,
and appellee obtained for it a bill of lading
and shipped it to Waco with other cotton,
there to be compressed. Some months afterwards appellee sold the cotton, and appellant, claiming that it belonged to some of
his customers, as bailee of the cotton, demanded the proceeds of the sale from appellee. Appellee declined to pay the money
to appellant.

Appellant sued for $1,000 damages, alleging that he was the legal custodian and
bailee of the cotton, holding it in trust for
the rightful owners; that he had issued
tickets for it to such owners; and that upon presentation by them of such original
tickets they would be entitled to receive the
cotton. He alleged that appellee, without
his knowledge and consent, had fraudulently appropriated and converted the cotton,
made sale of it, and placed it beyond the
reach of appellant. He sued for the highest
market value of the cotton at any time subsequent to the alleged conversion and previous to the date of the trial.

Appellee pleaded the general issue and
also specially pleaded that on the date of
the alleged conversion, and prior thereto, appellant was engaged in the cotton yard business at Abbott, weighing and storing cotton
for the public, and that appellee was engaged in buying and selling cotton at that place.
He alleged that tickets were issued for cotton weighed by appellant, and that in each
instance of the purchase of cotton by appellee he had required and obtained from
the seller the tickets issued by appellant.
He alleged that some of the tickets delivered to him by those from whom he purchased had been lost or destroyed, and that
upon examination of his books he found that
three of the bales of cotton in question had
been bought by him from their respective
owners and that he was unable to ascertain
to whom the other two bales belonged. He
alleged that the exposure of the cotton to
the weather was causing it great damage,
and that appellant acquiesced in his demand for delivery of the three bales he
claimed to own, and suggested that he take
the other two bales and ship them to the
compress at Waco and hold them for whomsoever might claim them. He specially alleged that each of the bales was sold by
him. He set out in his answer a description of each bale by ticket number and compress weight, and stated the price per pound
received. He pleaded that he received 30
cents per pound for three of the bales and
18 cents per pound for the two others. He
alleged that after the sale had been made
he discovered the owner of the two bales of
cotton, the ownership of which could not
be ascertained at the time of shipment, and
paid to such owner the proceeds of the sale
of those two bales.

Appellant testified that appellee came to

him at his place of business and suggested to him that the five bales of cotton ought to be looked after. In response to this suggestion he replied to appellee, according to his testimony, that if he "had a shed I would haul it and put it under the shed." Cowan then told him that he, himself, had some cotton he was going to ship to the compress and suggested that appellant ship this cotton with his. Appellant replied to this suggestion that he would see his two bondsmen about it; that in a few days appellee came to him and asked if he had seen his bondsmen, to which he replied that he had seen only one of them, and then appellee suggested that appellant mark the cotton out and ship it with some that appellee was preparing to ship. Appellant testified that he complied with this suggestion, marked the cotton out, helped the float man haul it and put it on the platform. He testified that he had some other cotton to haul, and that while he was engaged in assisting to remove this cotton from the yard, appellee obtained a bill of lading for the five bales of cotton and thereafter shipped it out. According to his testimony, he went to the railroad agent and called for a bill of lading for the cotton after he had completed the delivery of another list, and the agent then informed him that appellee had already obtained a bill of lading for the cotton. Appellant made no complaint to appellee about the latter's making the shipment of the cotton in his own name. However, he testified that in the latter part of May, 1919, he discussed with appellee the matter of selling the cotton and told appellee that he thought he would sell it and put the money in the bank, because the compress charges and insurance were very heavy, and that if any ticket was presented he would then pay the money to the owner. He testified that he had several conversations with appellee concerning the cotton after it was shipped out, and that appellee on these occasions represented that the cotton had not been sold. He testified that some time after the middle of June, 1919, he had a conversation with appellee in which appellee told him that he had sold the cotton for 32¾ cents. He testified that a few days later he spoke to appellee about the sale of the cotton again, and appellee told him that he had failed to make delivery of the cotton because, as he presumed, it was not the kind of cotton the party to whom he had sold wanted. He testified to frequent conversations with appellee thereafter, and that finally, some months after the shipment, appellee told him that he had sold the cotton and got "22 and 30," and put the money to his own credit in the bank. Appellant testified that he then asked appellee why he did not place the money to his (appellant's) credit, and that appellee replied, "I was afraid you would spend it."

Appellant alleged and swore that the five bales of cotton taken by appellee were designated by certain respective numbers and weights. Appellee alleged and swore that the numbers of the five bales of cotton, except one, were different from those contended for by appellant, and that the weights were all different. Appellant testified that he had been weighing cotton about four years, and that during that time he had "sampled cotton and noticed cotton with a view to determining and passing upon the grades." He testified that he thought he had become sufficiently familiar with the various grades of cotton from samples to be able to tell reasonably well the different grades, and that he could tell the weight of cotton as well as many buyers; that he found his classifications of cotton to be in accord with those made by cotton buyers, and that he thought two of the bales of cotton shipped by appellant were middling or better. These two bales he specifically designated by number and weight. However, we think the evidence is conclusive that appellee made settlement for one of them with the owner, who claimed it after the sale. There is no proof in the record as to the weight of any of the cotton except the two bales above mentioned.

The record contains evidence that the cotton market during the period covered by the controversy was in a chaotic condition and that no real market value for the cotton existed.

J. G. Marks, a witness in the case, testified that cotton had no fixed market value during the time; that it was just a matter of what each individual buyer would pay for it as to what it would bring. This witness further testified as follows:

"We had a very strange season that year. You would strike one man and he would offer you a price, and maybe the next man would offer $25 a bale more; but I think where you would find a man in this country who would buy cotton during March, 1919, the price would be about 33 cents a pound for middling or better. * * * Middling cotton was selling along about the same price in May, 1919. * * * The new cotton opened up in 1919 at about 38 cents; about the middle of July, 1919, we had about the same condition we had along later on. Cotton was pretty hard to sell. I suppose they would sell it along about like they did until new cotton came in—about 33 or 34 cents. I do not think there was much change in those relative prices until about the time the first new bales came in."

Appellant positively testified that he was offered "32 and 35 cents for the cotton by W. S. Howell."

The case is before us on a single assignment of error to the effect that the court erred in instructing a verdict for appellee.

It is obvious that the evidence in appellant's behalf was rather weak and, to say the least, somewhat vague. However, we are of the opinion that the evidence was sufficient to support a partial recovery.

We think appellant's testimony clearly establishes a conversion by appellee, and, if the jury had disregarded appellee's testimony on this feature of the case, as it might have done, then a finding in conformity with this evidence would have been sustained. Appellant's testimony that he did not authorize the shipment to be made in appellee's name, that he, himself, delivered the cotton to the railroad with the intention of obtaining a bill of lading in his own name, and that while he was engaged in delivering another list of cotton appellee obtained a bill of lading without appellant's knowledge or consent, supports the allegation of conversion, conceding that this testimony was weakened by appellant's confession that he made no protest to appellee or sought to regain possession of the cotton, although on that same day he found out that appellee had made shipment of the cotton in his own name. Appellant's failure at once to protest against appellee's act in taking a bill of lading to the cotton was not authorization or ratification of the act, and his testimony is sufficient on this feature of the case to constitute a denial of either express or implied authorization of appellee's assertion of dominion and control over the cotton.

While appellee denied that the cotton delivered to him bore the respective numbers and had the weights by bale claimed by appellant, yet these variances as to numbers and weights merely constituted a conflict of testimony, and this the jury was under the duty to pass upon and from it to make a finding of the actual facts.

As to the proof of value in connection with identification of the cotton, we do not believe it is sufficient except as to one bale. As above stated, ownership of two of the bales was established with reasonable certainty. These bales appear to have belonged to J. R. Blair, and the evidence is also practically conclusive that appellee paid Blair for them. Blair being the owner, and having been satisfied by the settlement made with appellee, appellant, of course, could assert no interest in these two particular bales. One of these bales of cotton for which appellee paid Blair appears to have been one of the two which appellant testified was of middling grade or better according to his judgment. The other bale was that designated in appellant's evidence as No. 1398. These two bales alone are given a grade by appellant. He does not testify to any facts from which the grade of the other three bales of cotton can be established, and there is no evidence in the record from which any particular grade can be attributed to the three remaining bales. While appellant did testify that he was offered "32 and 35 cents" for the entire lot of cotton by a cotton buyer, yet the evidence is given in a connection which renders it without significant probative force. It appears from appellant's statements that if such offer was made it was based upon mere representations made to the buyer by appellant and not upon the buyer's knowledge of the grade or character of the cotton, which the buyer had not seen.

If the case had been submitted to the jury as to the one bale of cotton above designated as No. 1398, and a finding for appellant for its value computed upon any of the estimates of value of middling cotton made by the witness Marks, such finding would have been sufficiently sustained by the evidence.

It appearing without dispute that appellant, as bailee, was entitled to the possession and control of the cotton at the time it was shipped, and appellant's testimony sustaining the contention that appellee converted the cotton, sold it, and thereby placed it beyond appellant's reach, appellee's wrongful acquisition of it was, in our opinion, thereby established.

The testimony adduced in behalf of appellant being sufficient to identify the grade of at least one bale of the cotton, and to sustain a finding of its value, an issue of value was presented. A finding by the jury of damages based upon evidence of value above mentioned would have been sustained and justified by the record.

We accordingly conclude that an issue of fact was raised as to the two primary questions of fact in the case, which were the questions of whether or not appellee converted the cotton and placed it beyond recovery by appellant, and whether or not there was any sufficient proof to sustain a finding of value as to any portion of the cotton involved in the controversy. Holding this view of the case, we find it necessary to reverse the judgment of the trial court and remand the cause for further proceedings.

There was an intervention in the case by a claimant of three bales of the cotton. Judgment was rendered against the intervener and he has not appealed. The judgment as it affects him, accordingly, requires no consideration by this court.

Reversed and remanded.